**EDWARD KLEIN TRUCK AND HEAVY EQUIPMENT COMPANY, INC., Plaintiff,**

v.

**PITMAN MANUFACTURING COMPANY, a division of A.B. Chance Co., Defendant.**

**Civ. A. No. 79–796.**

United States District Court, W. D. Pennsylvania.

March 24, 1981.

Gordon F. Harrington, Washington, Pa., for plaintiff.

Arthur Stroyd, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

KNOX, District Judge.

Plaintiff, Edward Klein Truck and Heavy Equipment Company, Inc., a Pennsylvania corporation with its principal place of business in this district, filed this action on June 8, 1979 to recover damages for an alleged breach of a sales contract. Maury Klein is the general manager of the plaintiff and was acting on its behalf at all times. (Hereinafter the name Klein shall designate both). Klein alleges that Pitman Manufacturing Company, a Delaware corporation with its principal place of business in Missouri, breached a contract to sell to Klein certain truck bodies. Jurisdiction is premised on the diversity of the parties' citizenship and therefore Pennsylvania law applies to all substantive issues raised in this case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Klein is in the business of buying and selling new and used construction equipment in wholesale and retail capacities. Pitman Manufacturing Company (hereinafter Pitman) is a division of A.B. Chance

Company with a plant in York, Pennsylvania. Pitman's York plant fabricates and assembles utility bodies which are mounted onto truck chassis to be used primarily in the construction industry by workers to store and carry their tools. According to Klein, on March 2, 1977 plaintiff and defendant entered into a contract for the purchase by plaintiff of 286 truck utility bodies from defendant for $76,890. A $5000 deposit was paid by plaintiff with the balance to be paid by cashier's check upon pick up of the merchandise. The financial terms were subsequently modified to enable plaintiff to pick up the bodies and pay for them within 30 days according to the standard in the industry. By July 18, 1977, plaintiff had received only 177 of the truck bodies and reiterated its desire to purchase the remaining 109 bodies through a second purchase order to the defendant. Plaintiff contends that thereafter defendant attempted to unilaterally modify the contract of March 2, 1977 by offering to furnish the truck bodies to plaintiff in an unassembled form for a reduced price. Plaintiff rejected this modification and on June 1, 1978, received notice that defendant cancelled the contract. Plaintiff seeks damages for defendant's breach.

According to plaintiff's theory of the events culminating in this lawsuit, the truck bodies had been labelled as obsolete by Pitman and were to be disposed of within one year according to company policy if no buyer was found for them. The scrap value of each body was between $20 and $30. Employees of Pitman contacted Klein and they entered into a contract by which Klein was to pay $350 each for the 108 inch bodies and $310 each for the 96 inch bodies. Included among these bodies were eleven 108 inch and 100 ninety-six inch bodies which were in unassembled pieces. Pitman was to assemble the bodies during its slow season late in October of that year. One week after the agreement was reached between plaintiff and defendant, Klein verbally contracted to sell one-half of the bodies to Fruehauf Corporation at twice the price Klein had agreed to pay. The other half were to be sold in the regular course of Klein's business.

Klein made regular payments to Pitman from March 4, 1977 through June of 1977 but nonetheless, according to Klein, Pitman refused to assemble the 111 truck bodies which were in pieces. Rather, in August of 1977, Pitman notified Klein that it no longer had any inventory for the 108 inch bodies, that it would not be able to complete assembly until later than anticipated and offered to sell the parts at a reduced price. Again in October of 1977 Pitman offered to sell the parts at an even further reduced price, but since Klein lacked the facilities to assemble them and because the cost of assembly would exceed the contract price, Klein refused. In May of 1978 Klein picked up 5 assembled bodies on a C.O.D. basis, leaving 95 due under the contract. On June 1, 1979, Klein alleges that it learned for the first time that Pitman would not assemble any of the bodies. As a result of this breach, Klein seeks $71,280 in damages.

Defendant contends that Klein failed to pay for the bodies within 30 days of delivery and this justified Pitman's cancellation of the contract in July of 1977. Pitman argues that the second purchase order received from the plaintiff on July 18, 1977 in which plaintiff offered to buy the remaining bodies at the same price and according to the same terms of the March 2, 1977 contract, constituted a new offer. Pitman avers that it rejected this offer but countered with an offer to assemble the bodies if plaintiff paid the $13,735 balance or, in the alternative, to sell the bodies unassembled at greatly reduced prices if plaintiff paid the entire balance of its account. During the ensuing months, Pitman continued to communicate with plaintiff in hopes of recouping the outstanding balance and maintains that it would have assembled the 95 remaining bodies if plaintiff had paid its account in full. When Pitman finally scrapped the bodies, Klein still owed $4260 to Pitman.

A non-jury trial was held in Pittsburgh on December 2, 3 and 4 of 1980. Pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, the court makes the following:

**104**

### Findings of Fact

1. Plaintiff, Edward Klein Truck and Heavy Equipment Company, Inc., is a Pennsylvania corporation and maintains its principal place of business in Pennsylvania.

2. Defendant, Pitman Manufacturing Company, is a division of A.B. Chance Co., a Delaware corporation with its principal place of business in Missouri. Pitman has a plant in York, Pennsylvania.

3. In August of 1976, Pitman began contacting companies concerning the liquidation of certain inventory which it determined to be obsolete.

4. After negotiations, Klein and Pitman entered into a contract on March 2, 1977 whereby Klein agreed to pay $76,890 for 286 truck bodies. This included, *inter alia*, eleven 108 inch utility bodies at $350 each and one hundred 96 inch utility bodies at $310 each. The terms of the contract were $5000 deposit upon acceptance with the balance to be paid by cashier's check upon pick up of the merchandise. (Plaintiff's Exhibit A)

5. The sole dispute of this case concerns those utility bodies which were not assembled at the time of the contract. While no time for performance was specified in the contract, the parties agreed that these bodies would be assembled during the latter part of October, 1977, since this was generally a slow time for Pitman's business. The bodies were to be assembled by Pitman from inventory at its York plant.

6. On February 23, 1977, plaintiff paid $5000 to defendant. (Plaintiff's Exhibit B)

7. From March 2, 1977 to May 19, 1977, Pitman made available all 177 of the assembled truck bodies and Klein picked up the last shipment on May 19, 1977.

8. At plaintiff's request, the C.O.D. terms of the contract were modified and Pitman permitted Klein to pick up the truck bodies without immediate payment. Klein and Pitman agreed to alter the terms so that Klein was to pay for the bodies within 30 days of delivery. Thirty days net was the standard in the industry.

9. Klein made the following payments to Pitman by June 30, 1977:

| February 23, 1977 | $5000 | (Plaintiff's Exhibit B) |
| March 4, 1977 | 3600 | ( " D) |
| March 11, 1977 | 5120 | ( " E) |
| March 18, 1977 | 6880 | ( " F) |
| April 6, 1977 | 3840 | ( " H) |
| May 17, 1977 | 2240 | ( " I) |
| May 17, 1977 | 1680 | ( " J) |
| June 30, 1977 | 5000 | ( " K) |

10. As of July 5, 1977, Klein owed Pitman $13,735 on the contract of March 2, 1977.

11. On July 18, 1977 Klein sent purchase order No. 9864 to Pitman for the one-hundred 96 inch bodies and the nine 108 inch bodies which had not yet been assembled. All terms of this second purchase order were as per the agreement of March 2, 1977. (Plaintiff's Exhibit L)

12. On August 8, 1977 Pitman responded that it no longer had inventory for the 108 inch bodies but would be willing to sell Klein five assembled truck bodies for $310 each and ninety-five unassembled 96 inch truck bodies for $155 each if plaintiff paid his account of $13,735. (Plaintiff's Exhibit M)

13. Klein rejected Pitman's offer to sell unassembled truck bodies at reduced prices and did not pay his account in full. In September of 1977, Klein's account was turned over to the collection department of Pitman. (Defendant's Exhibit 10)

14. By letters dated October 3, 1977, November 9, 1977, December 28, 1977 and January 24, 1978, Pitman reaffirmed its offer to sell Klein the unassembled parts if Klein would first clear its balance due from earlier shipments. (Defendant Exhibits 11, 12, 13, 14 and 15).

15. On December 27, 1977, David Klein, Klein's Assistant Manager, agreed to pay the outstanding debt in full and Pitman agreed to assemble the remaining truck bodies. (Defendant's Exhibit 14)

16. On February 27, 1978 Pitman received a check for $3735 from Klein in partial payment with a representation that further payments would be forthcoming. (Defendant's Exhibit 16)

17. After a series of requests for further payment, Klein forwarded a check for $2380 on April 11, 1978. (Plaintiff's Exhibit P)

18. During telephone conversations in April of 1978, Mr. Harmon requested payment from Klein and offered to make available for C.O.D. pick up by Klein in mid-May, 1978, the five assembled bodies which had been mentioned in Pitman's counteroffer on August 8, 1977, at the same price, while arranging for additional payments on the past due account. As a result of these negotiations, Klein forwarded a check for $3360 at the end of April, 1978, leaving a balance due of $4260. (Plaintiff's Exhibit Q, S)

19. On May 15, 1978, Klein paid for the five assembled bodies when it picked them up. (Plaintiff's Exhibit T)

20. After May 15, 1978, Klein refused to make any further payment to Pitman even though its account was more than one year in arrears. Klein told Pitman that no further payment would be made unless Pitman tendered delivery of fifty more bodies.

21. In a letter dated June 1, 1978, Pitman informed Klein that the remaining utility bodies would be scrapped and that Klein still owed $4260 in principal. (Plaintiff's Exhibit U)

22. No further payment has been received by Pitman from Klein.

### Discussion

Plaintiff concedes that under the terms of the original contract of March 2, 1977, it was required to pay for the bodies within thirty days of taking delivery and that its failure to pay for the assembled bodies by mid-June, 1977, constituted a breach of the contract by Klein. The dispute centers around which, if any, remedies Pitman elected to pursue as a result of this breach. Section 2–703 of the Uniform Commercial Code, 13 Pa.C.S.A. § 2703 sets out the remedies available to an aggrieved seller:

> Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or on the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (section 2612), then also with respect to the whole undelivered balance, the aggrieved seller may:
> (1) Withhold delivery of such goods.
> (2) Stop delivery by any bailee as provided in § 2705 (relating to stoppage by seller of delivery in transit or otherwise).
> (3) Proceed under § 2704 (relating to right of seller to identify goods to contract notwithstanding breach or to salvage unfinished goods).
> (4) Resell and recover damages as hereafter provided (§ 2706 [relating to resale by seller including contract for resale]).
> (5) Recover damages for nonacceptance (§ 2708) or in a proper case the price (§ 2709).
> (6) Cancel.

Pitman contends that it elected to cancel the contract in July of 1977 while still looking to Klein for damages. Plaintiff argues that Pitman did not cancel but rather took every action to await performance until June of 1978, at which point Pitman had expressly waived Klein's breach. Klein contends that Pitman waived the breach by its promise on April 18, 1978 to assemble the bodies if Klein paid an additional $2200 toward the $7620 balance due and owing. In its post-trial brief, Klein states that "[i]t is this subsequent promise by Pitman which Klein seeks to enforce in this legal action." (Plaintiff's Post-trial Brief at 6).

Plaintiff's positions are not only inconsistent, they are without merit. One of the factors relied upon by Klein to prove that the contract was never cancelled is the fact that it never received notice. However, plaintiff concedes that it did receive unequivocal notice of cancellation on June 1, 1978 and there is evidence to indicate that Klein should have known as early as July of 1977 when Pitman requested a new purchase order for the unassembled bodies. In either case, authorities interpreting this section of the Uniform Commercial Code have not read into it a requirement that

notice be immediately given to the buyer upon cancellation. Anderson, *Uniform Commercial Code* § 2–703:36 (2d ed. 1971). While some affirmative action on the seller's part is required, it is immaterial when this manifestation of intent is made. Barring elements of waiver or estoppel, the seller can wait until the buyer sues him and assert cancellation as a defense or a counter-claim. *Id.*

■ Klein argues that elements of waiver or estoppel do prevent Pitman from cancelling the contract. According to Klein, Pitman's course of conduct manifested an intention to excuse Klein's failure to pay and perform its antecedent contractual duty in spite of Klein's breach. As late as April 18, 1978, Klein asserts that Pitman stated in a memo that it would assemble the truck bodies if Klein paid $2200. The memorandum was not admitted into evidence, but the testimony indicates that Pitman promised to assemble *five* bodies for pick-up in May of 1978 if Klein paid $2200 towards its account and paid for the five bodies C.O.D. Klein paid more than was requested and picked up the five bodies. Nowhere is there any evidence to indicate that Pitman agreed to take less than the full balance due in order to produce all of the remaining bodies. The fact that the parties continued to transact small items of business and to work out their account does not constitute a waiver of plaintiff's breach. *Willred Company v. West-Moreland Metal Mfg. Co.*, 200 F.Supp. 55 (E.D.Pa.1959).

■ Therefore, we find that Klein's failure to timely pay for the utility bodies entitled Pitman to cancel the contract of March 2, 1977 and that Pitman did elect to cancel. The ongoing nature of the business relationship indicates that the parties continued to bargain after the original contract was cancelled, but never reached an agreement which was acceptable to both sides. We view Klein's second purchase order as a new offer to purchase the unassembled bodies at the same price and according to the same terms as the agreement of March 2, 1977. Pitman rejected this offer but countered with two alternatives. Pitman offered to sell the finished bodies at the earlier prices if Klein would immediately satisfy its account with Pitman. In the alternative, Pitman offered to sell the unassembled bodies at a reduced rate, again, if Klein would first satisfy the balance owing. It is an established principal of contract law that where a counter-offer or a conditional acceptance which amounts to a counter-offer is made by the offeree, it operates as a rejection of the original offer. 1 *Williston on Contracts* § 77 (3d ed. 1957).

While compromises were worked out on occasion, such as the May 1st, 1978 delivery of five more assembled bodies, the testimony indicates that there was no meeting of the minds as to the unassembled bodies. Plaintiff continued to insist that production of the bodies begin before he paid the balance and defendant continued to insist that the entire balance be satisfied before assembly began. Mutual assent is essential to the formation of a contract and that assent must be manifested by one party to another. 1 *Williston on Contracts* § 22 (3d ed. 1957).

Plaintiff asserts that the reason Pitman refused to assemble the remaining truck bodies is because they quickly learned that it cost more to put them together than they were receiving from Klein. Whatever motive defendant had for its position is irrelevant. Under § 2–703 of the Uniform Commercial Code, 13 Pa.C.S.A. § 2703, the aggrieved seller has a choice of remedies and is ordinarily entitled to consider merely his own advantage. Anderson, *Uniform Commercial Code* § 2–703:7 (2d Ed. 1971). Had Klein responded timely to any of Pitman's counter-offers by paying its past due account in full, it would stand in a much better position to challenge Pitman's motives than it does under these circumstances.

### Defendant's Counterclaim

Defendant seeks damages in the amount of $14,697.72 as of November 30, 1980 for the $4260 which plaintiff concedes owing for bodies delivered by May 19, 1977, interest at the rate of one and one-half percent

per month and lost income from the sale of the bodies identified to the contract but scrapped due to plaintiff's breach.

■ Where a seller cancels a contract, he retains any remedy for breach of the whole contract or any unperformed balance. 13 Pa.C.S.A. 2106(d). The Uniform Commercial Code gives an aggrieved seller the right to resell the goods and recover damages for any loss, sue for damages or sue for the price. 13 Pa.C.S.A. 2703. These remedies are cumulative and not exclusive. *Id.* Under 13 Pa.C.S.A. 2704, when the aggrieved seller has unfinished goods in his possession, he may resell them, or complete their manufacture and wholly identify them to the contract, or proceed under any other reasonable manner. When the seller resells the unfinished goods for scrap or salvage value, he may hold the buyer responsible for loss from such resale if he has proceeded in accordance with the Code's provisions as to resale and the goods have been shown to have been intended for the buyer's contract. 13 Pa.C.S.A. 2706.

There has been no evidence to indicate that the resale of these obsolete truck bodies was not made in good faith or in a commercially reasonable manner and there is no dispute that the scrapped bodies were intended for sale to Klein. The figures used by Pitman to reach the figure of $6600 for lost income are supported by the testimony of Mr. Denison, Pitman's Manufacturing Manager, and are properly calculated.

■ In addition to lost profits, defendant seeks the $4260 due and owing for goods accepted by Klein together with one and one-half percent interest per month. Klein admits owing this amount and under Pennsylvania law, defendant is entitled as a matter of right to the recovery of interest on liquidated sums unjustly withheld. *Peterson v. Crown Financial Corp.*, 498 F.Supp. 1177 (E.D.Pa.1980). Such interest is to be computed from the time the liquidated amount was payable and 6% interest is the applicable rate in contract claims where a contrary rate has not been established by the parties. *Sun Shipbuilding Dry Dock Co.*

*v. U.S. Lines, Inc.*, 439 F.Supp. 671 (E.D.Pa. 1977), *aff'd* 582 F.2d 1276, *cert. denied* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1978).

The contract makes no reference to any interest rates since the original arrangements called for delivery C.O.D. Pitman argues that interest charges of one and one-half percent per month are standard with Pitman and with the rest of the industry and that Klein was specifically made aware of these charges as early as July 31, 1977. We find nothing in the record to indicate that Klein was made aware of such charges. To the contrary, the exhibits indicate that at various times during the negotiations, plaintiff was advised of service charges which had been added on to the balance, but the percentage of the service charge was never mentioned. In several of the requests for payment, the service charge was omitted entirely and at one point it was waived altogether. (*See* plaintiff's exhibits M, N and U; defendant's exhibits 10, 12 and 14).

Under these circumstances, we cannot say that Klein was specifically advised of Pitman's particular interest charges and the usual rate of 6% simple interest computed from June 19, 1977 on the balance as it fluctuated will be assessed. Our calculations indicate that total interest in the amount of $1446.90 is due, based upon the following:

| dates | amount due | interest |
|---|---|---|
| 6/19/77 to 6/30/77 | $18,735 | $ 43.23 |
| 6/30/77 to 2/27/78 | 13,735 | 549.40 |
| 2/27/78 to 4/11/78 | 10,000 | 75.00 |
| 4/11/78 to 4/21/78 | 7,620 | 12.50 |
| 4/21/78 to 5/1/81 | 4,260 | 766.80 |
| | TOTAL INTEREST | $1446.90 |

*Conclusions of Law*

1. On March 2, 1977, Pitman and Klein entered into a contract which included the sale of certain 108 inch and 96 inch truck utility bodies.

2. Klein's failure to pay its account in full within thirty days after shipment constituted a breach of the contract between the parties.

3. Upon Klein's failure to pay its account in full within 30 days, Pitman became an aggrieved seller under 13 Pa.C.S.A. § 2703 and had the right to suspend its performance under the contract or cancel the contract.

4. Pitman cancelled the contract with Klein.

5. Pitman was not required to notify Klein immediately of its intention to cancel.

6. Pitman did not waive its right to cancel by continuing to deal with Klein.

7. Pitman is entitled to damages for the amount due and owing from Klein under the contract of March 2, 1977 in the amount of $12,306.90.